DAVENPORT, Respondent, *v.* TOWNSEND et al, Appellants

No. 8475

TOWNSEND, Appellant, *v.* DAVENPORT et al, Respondents

No. 8476

Submitted February 1, 1945. Decided March 16, 1945.

157 Pac. (2d) 477

Mr. John K. Claxton and Mr. Harlow Pease, both of Butte, for Appellant.

Messrs. Corette and Corette, Kendrick Smith and William A. Davenport, all of Butte, for the Respondents.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This appeal involves two actions. One is an action, No. 39242, commenced by William A. Davenport against Clara Townsend to recover upon a promissory note in the sum of $1,800. The other is an action, No. 39339, by Clara Townsend against J. R. Davenport seeking to have declared null and void a certain note in the sum of $4,000, and to recover certain monies paid as interest and commissions, all alleged to have been made without consideration and as a result of fraud. The $1,800 note in the first action represents interest accumulated on the obligation mentioned in the second action. J. R. Davenport was brought into action No. 39242 as a cross-defendant upon charges of fraud set out in the answer of Clara Townsend. Both actions involve the same questions and both were tried upon the same evidence. No useful purpose would be subserved in setting out in detail the issues embraced in the pleadings. The district judge found the issues against Clara Townsend in both actions.

The facts developed at the trial, summarized, were the following: In the year 1927 Clara Townsend entered into a contract with the banking firm of W. A. Clark and Brother for the purchase of the Barrenstein Apartments in Butte for the sum of $29,000. W. A. Clark and Brother held a mortgage covering the apartments against Peter Barrenstein, the original owner, which they agreed to and later did foreclose. The period of redemption under the mortgage foreclosure existed until June

5th, 1929. On the day before the right of redemption had expired, J. R. Davenport acquired from Barrenstein for $1,300 an assignment of his right of redemption. This he sold to Mrs. Townsend for $5,000. The fraud charged by Mrs. Townsend relates to this sale.

The evidence is conflicting regarding just what transpired between Davenport and Mrs. Townsend in effecting this transaction. Mrs. Townsend testified that the day before the time for redemption expired Davenport came to her apartment and represented that Barrenstein was about to redeem the property and was able to do so, but that he could be bought off for $2,000; that she authorized him, as her agent, to procure the Barrenstein equity for $2,000. He came back the second time to her apartment, stating that Barrenstein would not take the $2,000 but demanded $5,000, and that when she stated that she did not have $5,000 Davenport suggested that she pay what she could and that he was sure Barrenstein would take the balance in monthly payments; that being fearful that she would lose her investment, on which she had paid $5,000 down and expended between $10,000 and $15,000 for furniture and installing a new furnace, she consented to obligate herself for the $5,000 demanded. She did this by giving a note for $4,000, the one involved in action No. 39339, secured by a mortgage, and another note for $310 and a check for $690. The record shows that in fact Barrenstein never intended to redeem the property and was financially unable to do so; that he did not receive the $5,000 from Davenport or any other or greater sum than $1,300 for his equity in the property.

In substance Davenport testified that on the day before the time for redemption expired he purchased the Barrenstein equity outright for $1,300; that when he called to see Mrs. Townsend in her apartment he informed her of the fact that he had purchased the equity and that he was about to redeem the mortgage and take over the property, and made a proposal to buy her furniture; that she became quite disturbed or excited over the matter and asked if she could not keep the property by paying

more, and that thereupon he offered to sell his equity to her for $5,000, which was done.

In addition to the testimony given by Mrs. Townsend herself there is evidence on the part of other witnesses corroborating certain portions of her narrative of what transpired. There is but little if any direct evidence in the record to corroborate the narrative of Mr. Davenport. The first point urged by appellant, Mrs. Townsend, is that the court erred in not making specific findings covering the issues in the case. We hold that the findings of the court were sufficient. The determinative point in the cases turns upon the question whether the evidence is sufficient to sustain the court's findings.

The court found "that all of the transactions between the plaintiff Clara Townsend and the defendant J. R. Davenport ᴕn or about June 4th and 5th 1929 were fair and honest and consistent with fair dealings between the parties; that J. R. Davenport did not, on or about June 4th and 5th 1929, or at any other time, make any misrepresentations to the plaintiff Clara Townsend; that except as the same may be contrary to any express finding of fact herein made the court finds generally all of the facts in issue under the plaintiff's amended complaint in favor of the defendant, J. R. Davenport, and against the plaintiff and finds generally that J. R. Davenport has sustained by competent proof all of his denials of the allegations contained in plaintiff's amended complaint."

The court also expressly found there was no fraud. By making these findings the court accepted the statement of Mr. Davenport as to what transpired between him and Mrs. Townsend regarding the transaction in question. We cannot say from the record that the court was not justified in so doing. We must under familiar rules accept the conclusion of the trial court where, as here, there is substantial evidence supporting its findings. Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041.

Counsel for Mrs. Townsend contend, however, that even accepting Mr. Davenport's version of what transpired, the judg-

ment in his favor cannot stand. They contend that his own story brings the transaction within Sec. 7483, Revised Codes of 1935, defining undue influence. That section reads: "Undue influence consists: * * * 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

They argue that there was a relationship of trust and confidence between Mr. Davenport and Mrs. Townsend which was taken advantage of by Mr. Davenport in consummating the sale in question; that it was accomplished through coercion amounting to undue influence. The court expressly found that there was no relationship of trust or of confidence between the parties. Whether the court was right under the evidence in so finding, we need not determine. If there was a relation of trust and confidence between them it would not aid Mrs. Townsend in these actions because if we accept the statements of Mr. Davenport as to what transpired, as we must, and if according to his version of what transpired in June 1929 there was coercion and a breach of trust, it was known to Mrs. Townsend at the time and the cause of action is long since barred. The court found that the action, No. 39339, is barred by subsection 4 of Sec. 9033 because "the competent and reliable evidence introduced at the trial proves that on June 5th, 1929, the plaintiff, Clara Townsend, knew or was chargeable with knowledge of the true facts of the alleged fraud, which alleged fraud the court finds did not exist, and that she was chargeable with knowledge of said facts from the receipt of three deeds, two of which were from the Barrensteins to Anna Davenport, and the third of which was from Anna Davenport directly to Clara Townsend."

We do not agree with the court as to the reasons given for holding the action barred, but being bound by Mr. Davenport's version of the transaction we must hold that if there was a cause of action in favor of Mrs. Townsend because of duress, undue influence, or a breach of trust, it arose at the time of the transaction in June 1929, and has long since been barred. While the record does not show the exact date when

these actions were commenced, it is sufficiently clear that they were not commenced until some time in 1941.

The judgment is accordingly affirmed.

Chief Justice Johnson, and Associate Justices Morris, Adair, and Cheadle concur.